IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Dr. ALFONSO MARTÍNEZ-TABOAS,

    **Plaintiff,**

        **v.**

UNIVERSIDAD CARLOS ALBIZU, INC.; INSURANCE COMPANY XYZ; COMPANY ABC; JOHN & JANE DOE,

    **Defendants.**

**Civil No.** 20-1503 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court are two motions: defendant Universidad Carlos Albizu ("UCA")'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and plaintiff Dr. Alfonso Martínez-Taboas ("Martínez")'s motion for leave to amend the complaint. (Docket Nos. 7 and 10) For the reasons set forth below, UCA's motion is **GRANTED in part and DENIED in part** and Martínez's motion is **GRANTED in part and DENIED in part.**

## I. Background

This litigation concerns alleged employment discrimination and retaliation pursuant to the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as Puerto Rico law.

The Court construes the following facts from the first amended complaint "in the light most favorable to the plaintiff[]" and "resolve[s] any ambiguities" in the plaintiff's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011) (discussing the Rule 12(b)(6) standard of review).

Martínez was a professor at UCA. (Docket No. 10-5 at p. 5) He received awards for his expertise in various topics, including psychological trauma and personality disorders. Id. He became a professor in 2014, after 17 years as an associate professor. Id. As a professor, Martínez met or exceeded UCA's expectations, including receiving the 'Professor of the Year' award twice. Id.

Martínez turned 66 years old in 2019. See Id. at p. 5. Beginning in August, 2019, and continuing until November, 2019, Martínez filed internal complaints with UCA regarding a younger colleague allegedly defaming and humiliating him. Id. at p. 7. UCA did not respond to the complaints, leading Martínez to lodge additional complaints that he was being treated unequally due to his age. Id. Martínez warned UCA that if it did not investigate his complaint, he would pursue legal action for the alleged unequal treatment. Id. at p. 8.

In January, 2020, UCA instead opened an investigation into Martínez. Id. at p. 8. UCA Human Resources set up a meeting with Martínez for February 18, 2020 where he learned he was being

suspended.  Id. at p. 8—9.  Martínez was told that the suspension
was due to a sexual harassment allegation.  Id. at p. 9.

On February 25, 2020, Martínez filed a charge with the EEOC
for discrimination and retaliation, charge #515-2020-00234 ("the
first charge").  Id.

UCA's investigation of Martínez continued through February
and March, 2020.  Id. at p. 9-10.  UCA told him that the
investigation was based on allegations from female students over
incidents that allegedly occurred between 2016 and 2018.  Id.  The
female students had complained that they felt uncomfortable in his
lecture classes.  Id. at p. 10.

As an expert in psychopathology and psychological trauma,
many of Martínez's classes were related to normal and abnormal
sexuality.  Id. at p. 6.  UCA had never previously raised any
concern over the topics in Martínez's class syllabus for the 24
years he had been teaching.  Id. at p. 7.

UCA completed its investigation of Martínez and recommended
his termination.  Id. at p. 10.  On April 6, 2020, UCA terminated
Martínez.  Id.

In June, 2020, Martínez filed a second charge at the EEOC
alleging retaliation, #515-2020-00310 ("the second charge").  Id.
at p. 10.

Martínez received a right to sue letter from the EEOC for his first charge in August, 2020.  Id. at p. 3.

On September 24, 2020, Martínez filed this case against UCA, asserting a cause of action for discrimination based on age pursuant to the ADEA, Puerto Rico Law No. 100, and the Constitution of the Commonwealth of Puerto Rico; a cause of action for retaliation pursuant to the ADEA, Title VII, Puerto Rico Law No. 115, and the Constitution of the Commonwealth of Puerto Rico; and various state law claims.  (Docket No. 1)

On December 23, 2020, UCA moved to dismiss the complaint for failure to state a claim, and failure to exhaust administrative remedies.  (Docket No. 7)

The EEOC issued a right to sue letter to Martínez for the second charge on January 25, 2021.  (Docket No. 10-2 at p. 1)

After receiving an extension of time to reply to UCA's motion to dismiss, on February 8, 2021, Martínez moved to amend the complaint.  (Docket No. 10)  UCA opposed this motion on the basis of futility.  (Docket No. 12)  Martínez replied.  (Docket No. 15)

**II. UCA's Motion to Dismiss**

UCA's motion to dismiss was directed at Martínez's unamended complaint, though UCA's opposition to Martínez's motion to amend the complaint references the motion to dismiss and echoes its arguments.  (Docket Nos. 7 and 12)  While the Court could find

that the presentation of an amended pleading moots the original motion to dismiss, "the court simply may consider the motion as being addressed to the amended pleading.  To hold otherwise would be to exalt form over substance."  6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1476 (3d ed. 2015).

As the Court will next explain, the analysis required to determine if the motion to amend the complaint should be granted is identical to the analysis of a motion to dismiss under Rule 12(b)(6).  Accordingly, the Court will resolve the two motions together.

**III. Martínez's Motion to Amend**

    **A.    Legal Standard**

        **i.    Futility Review**

Pursuant to Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)(2)") a court "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Without an adequate basis for the denial of leave to amend "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," courts should allow parties to amend their

complaints.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>see also</u>

<u>Grant v. News Group Boston, Inc.</u>, 55 F.3d 1, 5—6 (1st Cir. 1995).

UCA argues that Martínez's proposed amended complaint is futile and, therefore, the Court should deny his motion to amend his complaint.  (Docket No. 12)  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 Moore's Federal Practice ¶ 15.08[4], at 15-80 (2d ed. 1993)).  When reviewing a motion to amend a complaint for futility, a district court applies the same standard it would apply to a motion to dismiss filed pursuant to Rule 12(b)(6).  <u>Id</u>.  This means that "there is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim."  <u>Id</u>.

Although the review process for futility mirrors that of the review process of a motion to dismiss, "[t]he appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case."  <u>Hatch v. Dep't. for Children, Youth & Their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001).  The First Circuit Court of Appeals explains:

> If leave to amend is sought before discovery is complete
> and neither party has moved for summary judgment, the
> accuracy of the "futility" label is gauged by reference
> to the liberal criteria of Federal Rule of Civil
> Procedure 12(b)(6). In this situation, amendment is not
> deemed futile as long as the proposed amended complaint
> sets forth a general scenario which, if proven, would
> entitle the plaintiff to relief against the defendant on
> some cognizable theory.

Id. (citations omitted).

The more liberal standard of futility review applies to the posture of this case. Here, Martínez moved to amend his complaint on February 8, 2021, and no motion for summary judgment has yet been filed. (Docket No. 10) The Court therefore proceeds to review Martínez's proposed first amended complaint pursuant to the criteria of Rule 12(b)(6).

### ii. Rule 12(b)(6) Standard

Rule 12(b)(6) permits a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio—

Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

"Plausible, of course, means something more than merely possible,

and gauging a pleaded situation's plausibility is a context-

specific job that compels [a court] to draw on [its] judicial

experience and common sense." Zenón v. Guzmán, 924 F.3d 611, 616

(1st Cir. 2019) (internal quotation marks omitted)

(quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50,

55 (1st Cir. 2012)). Additionally, "[w]hen . . . a complaint's

factual allegations are expressly linked to — and admittedly

dependent upon — a document (the authenticity of which is not

challenged), that document effectively merges into the pleadings

and the trial court can review it in deciding a motion to dismiss

under Rule 12(b)(6)." Beddall v. State St. Bank & Tr. Co., 137

F.3d 12, 17 (1st Cir. 1998).

### B.  Analysis

UCA's motion to dismiss and its opposition to Martínez's

motion to amend focus on the first two counts of Martínez's

complaint.  The Court will examine each cause of action separately.

### 1. Discrimination Based on Age

Martínez's first cause of action is discrimination based on age pursuant to the ADEA, as well as pursuant to Puerto Rico law.[1]  (Docket No. 10-3 at p. 12—14)

### a. ADEA *Prima Facie* Case

Without direct proof of discrimination, a claim under the ADEA follows the burden shifting framework developed in the Title VII context by <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973).[2]  <u>Del Valle-Santana v. Servicios Legales de P.R., Inc.</u>, 804 F.3d 127, 129 (1st Cir. 2015).

In this context, a plaintiff can create an inference of discrimination by producing evidence of the elements of the *prima facie* case.  <u>Id.</u> at 129—30.  The burden of production then shifts to the employer to produce a legitimate, non—discriminatory reason for the employment action.  <u>Id.</u>  The burden then ultimately shifts back to the plaintiff to show that this reason is a pretext, and that age was the "but—for cause for the employer's action."  <u>Id.</u> at 130 (quoting <u>Vélez v. Thermo King de P.R., Inc.</u>, 585 F.3d 441,

---

[1] This cause of action is also pursuant to Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico. (Docket No. 10—3 at p. 12) Because UCA does not raise any argument about this part of the claim, the Court does not address that issue.

[2] Additionally, "[b]ecause the analytical framework for ADEA discrimination and retaliation cases was patterned after the framework for Title VII cases . . . . the precedent is largely interchangeable." <u>Ramos v. Vizcarrondo</u>, 120 F.Supp.3d 93 (D.P.R. 2015) (Gelpí, J.).

447—48 (1st Cir. 2009)(citations omitted)).  One version of the

*prima facie* case of age discrimination pursuant to the ADEA

requires that:

> (1)  the plaintiff is at least 40 years old when the alleged discrimination took place,
> (2)  his or her work was sufficient to meet the employer's legitimate expectations,
> (3)  the employer took an adverse action against the plaintiff, and
> (4)  either younger persons were retained in the same position upon the plaintiff's termination or the employer did not treat age neutrally in taking the adverse action.

Id. at 129—30.

At the motion to dismiss stage, a plaintiff does not need to

plead facts for every element that will eventually be necessary to

establish a *prima facie* case.  See Rodríguez-Reyes v. Molina-

Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013)(citing Swierkiewicz v.

Sorema N. A., 534 U.S. 506, 512 (2002)).  "What counts is the

'cumulative effect of the [complaint's] factual

allegations.'"  Rodríguez-Reyes, 711 F.3d at 55 (quoting Ocasio-

Hernández, 640 F.3d at 14).  The sum of the allegations, however,

must make the claim as a whole at least plausible.  Garayalde-

Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir.

2014)(citing Ocasio-Hernández, 640 F.3d at 14-15).  The elements

of the *prima facie* case are "part of the background against which

a plausibility determination should be made."  Rodríguez-Reyes,

711 F.3d at 54.   The "plausibility threshold 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal conduct.'"   Grajales v. P.R. Ports Auth., 682 F.3d 40, 49 (1st Cir. 2012) (quoting Ocasio-Hernández, 640 F.3d at 17 (citations omitted)).

### i. Failure to Investigate as an Adverse Action

Because the facts alleged can be confusing, the Court repeats the relevant allegations here. In the fall of 2019, a younger colleague humiliated and defamed Martínez. (Docket No. 10-5 at p. 7)  Martínez complained to UCA and asked them to investigate this colleague ("the first complaint").  Id.  UCA did not do so, however.  Id.  Martínez then complained to UCA that they were treating him unequally based on age because UCA normally investigates complaints made by younger professors ("the second complaint").  Id.

UCA argues in its Motion to Dismiss that Martínez has not alleged a plausible claim of discrimination because there is no third prong of the *prima facie* case, adverse employment action. (Docket No. 7 at p. 13)  UCA argues that failing to investigate Martínez's colleague is not an adverse employment action against Martínez because it did not have a tangible negative effect on him.  Id.  UCA echoes this argument in its opposition to the motion to amend the complaint.  (Docket No. 12 at p. 3)

Martínez argues that at this stage he does not need to satisfy a *prima facie* case and even so, failure to investigate is an adverse action under case law.  (Docket No. 15 at p. 2)

While the *prima facie* case is not a pleading standard, the elements of the *prima facie* case are "part of the background against which a plausibility determination should be made." Rodríguez-Reyes, 711 F.3d at 54.  An adverse action, the third prong of the *prima facie* case, "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012)(quoting Morales—Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010)(citations omitted)).

For his proposition that neglecting to investigate a complaint against a colleague is an adverse employment action, Martínez relies on a Second Circuit Court of Appeals case, Fincher v. Depository Tryst & Clearing Corp., 604 F.3d 712, 722 (2d Cir. 2010).  (Docket No. 15 at p. 7)  Martínez's reliance is misplaced, however.  In Fincher, the court held that a failure to investigate a complaint is only an adverse action if that failure is in retaliation for a prior protected act by the plaintiff.  Fincher, 604 F.3d at 721—22.  So, for example, a plaintiff who objects to

some discriminatory act and then is targeted by a colleague could experience an adverse employment action if the employer refused to investigate the colleague. Id. If, instead, the employer simply does not respond to an initial complaint about a colleague, the "employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint." Id. at 721.

There is no prior protected act here because Martínez did not make a complaint of discrimination before UCA refused to investigate his first complaint. (Docket No. 10—3 at p. 7—8) He complained of discrimination **after** it did not investigate his first complaint. Id. Refusal to investigate a run of the mill harassment complaint on its own is not a discrete change in the terms of employment or a decision causing a significant change in benefits. See Cham, 685 F.3d at 94; see also Kuhn v. United Airlines, 63 F. Supp. 3d 796, 802-04 (N.D. Ill. 2014), aff'd sub nom. Kuhn v. United Airlines, Inc., 640 F. App'x 534 (7th Cir. 2016)("Here, however, United allegedly failed to fully investigate what can be deemed run-of-the-mill harassment or mistreatment complaints, not [death] threats . . . . [T]he allegedly insufficient investigation does not rise to the level of a materially adverse action.")

In his reply to UCA's opposition to his motion to amend, Martínez seems to argue that UCA's failure to investigate his

second complaint could instead serve as an adverse action. (Docket
No. 15 at p. 9)  But this argument fails for essentially the same
reason – there is no prior protected action before the second
complaint.  The second complaint, which is where Martínez alleged
to UCA that he was being discriminated against, is the protected
action.  At most, Martínez is arguing that not responding to a
complaint of discrimination is retaliation for making the
complaint itself, but Fincher explicitly states that "an
employer's failure to investigate a complaint of discrimination
cannot be considered an adverse employment action taken in
retaliation for the filing of the same discrimination complaint."
Fincher, 604 F.3d at 721.

      The plausibility of the claim is determined with the *prima
facie* elements in the background, Rodríguez-Reyes, 711 F.3d at 54,
and a reasonable expectation that discovery will lead to evidence
of illegal conduct.  Grajales, 682 F.3d at 49.  The complete
absence of adverse action would be fatal to an eventual claim.
See, e.g. Marrero v. Goya of P.R. Inc., 304 F.3d 7, 22—25 (1st
Cir. 2002) (reversing denial of motion for judgment as a matter of
law for retaliation claim where the evidence only showed the
plaintiff had experienced a lateral transfer and therefore no
adverse action, an element of the *prima facie* case).  While a
plaintiff does not need to plead each element of a *prima facie*

case as long as the element can be plausibly inferred from the totality of the facts, see Rodríguez-Reyes, 711 F.3d at 55, if an element of the *prima facie* case is absent as a matter of law, the plaintiff has not pled a plausible claim.  Cf., e.g. Carney v. Town of Weare, No. 15-cv-291, 2017 WL 680384, at *9 (D.N.H. Feb. 21, 2017) (granting judgment on the pleadings to defendant where plaintiff's Title VII claim failed because the discrimination was not on the basis of sex as a matter of law).  No amount of discovery can reveal illegal conduct in that instance.  Cf. Grajales, 682 F.3d at 49.  Because the failure to investigate Martínez's complaints was not an adverse action, see Fincher, 604 F.3d at 721, there is no plausible claim based merely on the failure to investigate.  Cf. Carney, 2017 WL 680384, at *9; Marrero, 304 F.3d at 22—25.

Since Martínez argues an alternate discrimination framework, the Court will proceed to analyze if the other framework creates a plausible claim.

### ii. Hostile Work Environment

Martínez argues, in his reply to UCA's opposition to his motion to amend, that UCA's accusations of sexual harassment and subsequent investigation of him in January 2020, as well as his eventual termination, created a hostile work environment.  (Docket No. 15 at p. 8—9)

Because Martínez did not raise this argument until his reply, UCA did not make any argument about whether the facts alleged constitute a hostile work environment.  (Docket No. 12)

In the context of the ADEA, to plead a hostile work environment, "a plaintiff must show that:

(1)  he is a member of the class protected by the ADEA,
(2)  he was subjected to unwelcome harassment,
(3)  the harassment was based on age,
(4)  the harassment was sufficiently pervasive or sever[e] so as to alter the conditions of the plaintiff's employment and create an abusive work environment,
(5)  the objectionable behavior was both subjectively and objectively offensive such that a reasonable person would find it hostile or abusive,
(6)  that the plaintiff found it hostile or abusive, and
(7)  some basis for employer liability has been established.

Gutiérrez-Linés v. P.R. Elec. and Power Authority, 751 F.Supp.2d 327, 341–42 (D.P.R. 2010) (Domínguez, J.) (citations omitted); see also Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001) ("When assessing whether a workplace is a hostile environment, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance.") (citing Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 611 (1st Cir. 2000)).

Leaving aside whether a single event of being investigated for an allegedly false allegation plausibly meets the fourth prong, *i.e.* whether it is sufficiently severe so as to alter the conditions of employment, Martínez's allegations do not plausibly plead the third prong, that the harassment was based on age.

Martínez's only allegations related to age are that the professor who "publicly defamed and humiliated him" was "younger" and that UCA evidently refused to investigate this professor. (Docket No. 10—3 at p. 7)  Apart from a conclusory allegation that UCA was not investigating his complaint because of Martínez's age, Martínez does not plead any other fact that would create an inference that UCA's allegedly fabricated investigation of him was 'based on age.'  See Higgins v. State Street Corporation, 323 F.Supp.3d 203, 206-07 (D. Mass. 2018)(granting motion to dismiss for age discrimination because plaintiff did not allege any fact from which a fact—finder could infer age discrimination, such as that the defendant or its agent said or did anything to the plaintiff to suggest discrimination or that it hired a younger person with equal or less qualifications to fill the position the plaintiff was seeking).  On the contrary, Martínez alleges in his own first charge to the EEOC that the investigation "is a reprisal for my having questioned the repeated competence of the rector,

especially before the president" and makes no other mention of age discrimination.  (Docket No. 7—1 at p. 8)

In his amended complaint, Martínez does not elaborate on what the younger professor said about him.  (Docket No. 10)  But in his first charge to the EEOC, Martínez specifically alleges that the professor, along with three others, accused Martínez of being "a megalomaniac, misogynist, that I am a bad influence for the young people, that I am obsessed, that I deserve to be taken out of [UCA] with an intensive dogfight."  (Docket No. 7—1 at p. 6)  The younger professor also allegedly posted a "photo of a dog twerking" in reaction to a comment online proposing "that they make a protest against [Martínez] at the UCA."  Id. at p. 7.  Lastly, in Martínez's first charge, he writes that the younger professor "insinuates that I commit fraud as the Editor of Conduct Sciences and makes fun of my conferences where I explain what is the h index in publications."  Id.  None of these comments could reasonably be construed to be about Martínez's age.  See Gutiérrez-Linés, 751 F.Supp.2d at 342 (holding that plaintiff failed to establish at summary judgment that allegations of bothersome behavior like speaking sarcastically to plaintiff or touching items on plaintiff's desk were connected in any way to his age).

Martínez does not allege, for example, that anyone from UCA made comments to him about his age, nor that there was a pattern

of pushing out older professors, that UCA tolerated age—based
harassment by colleagues, or any other fact that would support an
inference that UCA's alleged harassment was based on age.  See
Higgins, 323 F.Supp.3d at 206-07.  Without a plausible allegation
that the harassment was due to age, there can be no hostile work
environment claim pursuant to the ADEA.  See Kahan v. Slippery
Rock University of Pennsylvania, 664 F. App'x 170, 174 (3d Cir.
2016) (affirming grant of summary judgment for defendant employer
on hostile work environment claim pursuant to Title VII when there
was no evidence that allegedly false sexual harassment allegation
was made against plaintiff because of his gender).

### iii. Termination as an Adverse Action

In its motion to dismiss and opposition to the
motion to amend, UCA focuses exclusively on arguing that the
failure to investigate Martínez's complaints was not an adverse
action.  (Docket Nos. 7 and 12)

Martínez does assert that his termination was adverse in his
reply to UCA's opposition to his motion to amend, though only
within the context of his argument that he was subjected to a
hostile work environment.  (Docket No. 15 at pp. 8-9)

The Court will not overlook, however, that Martínez clearly
experienced an adverse action when he was terminated.  See Reyes-
Orta v. P.R. Highway and Transp. Authority, 811 F.3d 67, 75 (1st

Cir. 2016) ("[T]ermination is an adverse employment action . . . .").

The elements of a *prima facie* case for termination vary slightly throughout the case law but in general the elements are:

(1) that he was at least forty years old when he was fired;
(2) that his job performance met the employer's legitimate expectations;
(3) that he suffered an adverse employment action such as a firing; and
(4) that the employer filled the position, thereby showing a continuing need for the services that he had been rendering.

Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014)(quoting Meléndez v. Autogermana, Inc., 622 F.3d 46, 50 (1st Cir. 2010)). The First Circuit Court of Appeals has cautioned as well that the fourth prong may be satisfied by eventual evidence that the "plaintiff's job functions were absorbed by several different employees of defendant." Rodríguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 59 (1st Cir. 2005)(quoting Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 760 (1st Cir. 1988).

As explained above, at the motion to dismiss stage a plaintiff does not need to plead facts for every element that will eventually be necessary to establish a *prima facie* case. See Rodríguez-Reyes, 711 F.3d at 54. "Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."

*Swierkiewicz*, 534 U.S. at 512.  All that a "plaintiff must plead" are "enough facts to make entitlement to relief plausible in light of . . . the *prima facie* standard . . . ."  *Rodríguez-Reyes*, 711 F.3d at 54.  Courts must look then to whether the totality of the factual allegations seem to show that the plaintiff could plausibly meet each element of the *prima facie* case.  See *Rodríguez-Reyes*, 711 F.3d at 55—58 (listing the elements of a *prima facie* case for political discrimination and then determining whether the allegations as a whole made it plausible to infer any element not directly pled); see also *Garayalde-Rijos*, 747 F.3d at 24—25 (analyzing the elements of a *prima facie* case of retaliation under Title VII and finding that the court could draw the reasonable inference that the third prong of causation was met based on the totality of the facts pled even though the plaintiff did not plead a specific fact alleging causation).

Martínez has pled facts that meet the first three prongs of the *prima facie* case when alleging that his termination was an adverse action.  See *Adamson*, 750 F.3d at 78.  But he did not plead any fact as to whether UCA hired or sought someone to fill his position.  Given that Martínez was teaching a course load, see Docket No. 10-3 at p. 5, the court can reasonably infer at this stage that there was a continuing need for his services.  See *Connolly v. Shaw's Supermarkets, Inc.*, 355 F.Supp.3d 9, 17—18 (D.

Mass. 2018)(inferring the on-going need for workers to do plaintiff's prior job and thus finding fourth prong of *prima facie* case to be plausibly met at motion to dismiss stage).

Plaintiff will ultimately have the burden to show not only that he can meet a *prima facie* case but that "his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age." Mesnick v. Gen. Elec. Co.*,* 950 F.2d 816, 823 (1st Cir. 1991) (quoting Freeman v. Package Mach. Co.*,* 865 F.2d 1331, 1335 (1st Cir. 1988)).  In determining if Martínez has pled enough facts to make out a plausible discrimination claim, the Court will not "test[] the complaint in a crucible hotter than the plausibility standard demands." Rodríguez-Reyes, 711 F.3d at 53.  After all, plaintiffs "rarely possess 'smoking gun' evidence" in employment discrimination cases to prove their employer's discriminatory motives, and as such they are entitled to use the burden—shifting framework of McDonnell Douglas. Vélez, 585 F.3d at 446 (quoting Arroyo—Audifred v. Verizon Wireless, Inc.*,* 527 F.3d 215, 218-19 (1st Cir. 2008)).

Martínez has pled sufficient facts to plausibly allege a *prima facie* case of ADEA discrimination for his termination.  Cf. Connolly, 355 F.Supp.3d at 17-18.  The Court therefore finds that the plaintiff's ADEA discrimination claim would survive a motion

to dismiss and thus his proposed amended complaint would not be futile.

UCA's motion to dismiss as to the first cause of action pursuant to the ADEA, (Docket No. 7 at pp. 11—16), is **DENIED.** Martínez's motion to amend his complaint, (Docket No. 10,) is **GRANTED** as to the first cause of action but may proceed pursuant to an unlawful termination case theory only.

### b. Puerto Rico Law 100

UCA writes in its motion to dismiss that Puerto Rico Law 100 ("Law 100") and the ADEA are conterminous and therefore this claim should also be dismissed for not alleging an adverse employment action. (Docket No. 7 at p. 16) Since UCA does not cite any case analyzing adverse action pursuant to Law 100, the Court declines to grant UCA's request. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.")

UCA's motion to dismiss as to the first cause of action pursuant to Law 100, (Docket No. 7 at p. 16), is **DENIED without prejudice.**

## 2. Retaliation

Martínez also alleges a cause of action for retaliation pursuant to the ADEA and Title VII, as well as Puerto Rico law.

### a. Exhaustion of Administrative Remedies

UCA argues in its motion to dismiss that Martínez did not exhaust administrative remedies because he did not include allegations of retaliation for protected conduct in his first charge to the EEOC. (Docket No. 7 at pp. 19—20) In UCA's opposition to Martínez's motion to amend the complaint, however, UCA admits that the second charge to the EEOC and subsequent right to sue letter cure this defect as to the retaliation claim under the ADEA. (Docket No. 12 at p. 2)

But UCA continues to assert that Martínez has not exhausted his administrative remedies regarding his cause of action for retaliation under Title VII because neither the first nor second charge include a reference to Title VII. Id. at p. 3—4.

Martínez does not respond to this issue in his reply to UCA. (Docket No. 15)[3]

In general, "[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation

---

[3] "The mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." Vega-Encarnación v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003).

which can reasonably be expected to grow out of that charge." Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009) (citing Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)). But, "the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." Id. at 32 (quoting Davis v. Lucent Technologies, Inc., 251 F.3d 227, 233 (1st Cir. 2001)). "[A]ll that is required is that 'the judicial complaint . . . bear some close relation to the allegations presented to the agency.'" Jusino v. Sears Roebuck of P.R., Inc., No. 13-1138, 2013 WL 3821608, at *3 (D.P.R. July 23, 2013) (Gelpí, J.) (quoting Morales—Cruz v. Univ. of P.R., 676 F.3d 220 (1st Cir. 2012) (citations omitted)). "A charge may be amended to clarify or amplify allegations made therein. Such amendments . . . related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1626.8(c) (2020).

Martínez filed two charges with the EEOC. See Docket Nos. 7-1 and 7-2. On the cover page of the first charge, Martínez checks boxes for discrimination based on retaliation, age, and disability, and in the text box states that his claims are pursuant to the ADEA and the ADA. (Docket No. 7-1 at p. 4) On the cover page of the second charge, Martínez checks only the box for

retaliation, and in the text box again states that his claims are pursuant to the ADA and the ADEA. (Docket No. 7—2 at p. 1) The second charge clarifies the allegations in the first charge and alleges additional acts that occurred after the filing of the first charge, including his eventual termination. See 29 C.F.R. § 1626.8(c) (2020).

Martínez's second charge essentially mirrors the facts alleged in his complaint and first amended complaint. See Docket No. 7—2. The fact that Martínez does not list Title VII on the cover page of his EEOC charge is not fatal. See Thornton, 587 F.3d at 32. Martínez has not added new facts within his complaint that would create a cause of action beyond what the EEOC would have reasonably investigated from his two charges. See Id. at 31. The charge to the EEOC does not need to list the expected causes of action to be later filed. Id. at 32; Jusino, 2013 WL 3821608 at *3.

UCA's argument would require that Martínez call Title VII by name in his EEOC charge to survive a motion to dismiss, when the facts in his complaint and the facts in the charge are largely identical. The Court declines to be so formalistic and finds that Martínez exhausted his administrative remedies.

### b. **Title VII Retaliation**

Martínez does, however, fail to state a cause of

action for retaliation pursuant to Title VII.

Title VII states that:

> [i]t shall be an unlawful employment practice for an
> employer to discriminate against any of his employees
> ... because he has opposed any practice made an unlawful
> employment practice by this subchapter, or because he
> has made a charge, testified, assisted, or participated
> in any manner in an investigation, proceeding, or
> hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Pursuant to Title VII, it is unlawful to

discriminate on the basis of "race, color, religion, gender, or

national origin."  Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir.

2005) (citing 42 U.S.C. § 2000e-15(c)(1) & 16(c)).  A *prima facie*

case of retaliation under Title VII requires that

> (1) the person engaged in conduct protected by Title
>     VII,
> (2) the employer took a materially adverse employment
>     action against him or her, and
> (3) there was a causal nexus between her or his
>     participation in the protected activity and the
>     adverse employment action.

Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278,

283 (1st Cir. 2014)(citing Medina—Rivera v. MVM, Inc., 713 F.3d

132, 139 (1st Cir. 2013).

The employment activity that the plaintiff opposed does not

need to "be a Title VII violation so long as [plaintiff] had a

reasonable belief that there was a Title VII violation, and he

communicated that belief to his employer in good faith." <u>Centola v. Potter</u>, 183 F.Supp.2d 403, 412 (D. Mass. 2002) (citing <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 261—62 (1st Cir. 1999). In <u>Lennon v. Rubin</u>, however, the First Circuit Court of Appeals foreclosed the argument that a complaint about discrimination based on age could be the basis for a reasonable belief that there was a Title VII violation. <u>Lennon v. Rubin</u>, 166 F.3d 6, 8 (1st Cir. 1999). There the court examined a federal employee's retaliation claims pursuant to Title VII and the ADEA, where the underlying opposition was to age discrimination. <u>Id.</u> As far as retaliation pursuant to Title VII, the court stated unequivocally that "since Lennon's previous complaints related to age rather than to a category protected under Title VII, his retaliation claims are not cognizable under Title VII." <u>Lennon</u>, 166 F.3d at 8.

Even taking every inference in his favor, Martínez's allegation is that UCA retaliated against him after he complained they were treating him unfairly on the basis of age. (Docket No. 10—3 at p. 14; Docket No. 15 at p. 8) Because Title VII does not protect against age discrimination, it was not a reasonable belief that he was objecting to behavior that was unlawful under Title VII. <u>See</u> <u>Lennon</u>, 166 F.3d at 8.

The Court therefore finds that the plaintiff's Title VII retaliation claim would not survive a motion to dismiss and his proposed amended complaint would be futile as to this cause of action.  UCA's motion to dismiss as to the retaliation claim pursuant to Title VII, (Docket No. 7 at pp. 16—20,) is **GRANTED.** Martínez's motion to amend his complaint is **GRANTED in part** as to all non—Title VII retaliation claims.

## IV.  Conclusion

For the reasons set forth above, UCA's motion to dismiss as to the first cause of action pursuant to the ADEA, (Docket No. 7 at pp. 11—16,) is **DENIED.** UCA's motion to dismiss as to the first cause of action pursuant to Law 100, (Docket No. 7 at p. 16,) is also **DENIED.**

UCA's motion to dismiss plaintiff's retaliation claim pursuant to Title VII, (Docket No. 7 at pp. 16—20,) is **GRANTED.** Martínez's claim for retaliation pursuant to Title VII is **DISMISSED WITH PREJUDICE.**  Partial judgment shall be entered accordingly.

Martínez's motion to amend his complaint, (Docket No. 10—3,) is **GRANTED** as to the first cause of action, but may proceed pursuant on an unlawful termination case theory only.  Martínez's motion to amend his complaint is **GRANTED** as to all non—Title VII retaliation claims.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 2, 2021.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE